IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* | § | |
| EDWARD HENDRICKSON, | § | |
| | § | Case No. 3-16-CV-292-M |
| Plaintiffs-Relator, | § | |
| | § | |
| v. | § | |
| | § | |
| BANK OF AMERICA, N.A., et al., | § | |
| | § | |
| Defendants. | § | |

**RELATOR'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS ALL CLAIMS AGAINST COMPASS BANK AS BARRED BY THE STATUTE
OF LIMITATIONS AND PARTIAL MOTION TO DISMISS CLAIMS AGAINST THE
DEFENDANT BANKS BASED ON THE STATUTE OF LIMITATIONS (Doc. 96)**

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.  FACTS ............................................................................................................... 2

III. ARGUMENT...................................................................................................... 3

      A.   The 120-Day Deadline Does Not Apply to Post-Death Benefits
          Accepted by the Banks After They Received a DNE ............................................ 3

      B.   Statute of Limitations Issues Cannot be Decided on the
          Motion to Dismiss Because There Are Contested Issues of Fact .......................... 3

      C.   Claims Against Compass Bank Should Not Be Dismissed. ................................... 4

      D.   Allegations Regarding Activity Examples Prior to February 2, 2010
          Do Not Warrant a Dismissal of Claims. ................................................................ 6

      E.   Information Regarding Wrongdoing Prior to February 2, 2010
          Is Properly Before this Court. ............................................................................... 7

      F.   The Relator's Allegations, Including Particular Details of a Scheme
          to Submit False Claims, Are Sufficient to Survive the Motion to Dismiss ........... 8

IV.  CONCLUSION................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*Doe v. Dep't of Justice,* 753 F.2d 1092 (D.C.Cir.1985) ................................................. 4

*F.T.C. v. Nat'l Bus. Consultants, Inc.,* 376 F.3d 317 (5th Cir. 2004) ............................. 4

*Firestone v. Firestone,* 76 F.3d 1205 (D.C.Cir. 1996) ..................................................... 4

*Frame v. City of Arlington,* 657 F.3d 215 (5th Cir. 2011) ............................................... 4

*Graham County Soil & Water Conservation District v. United States ex rel. Wilson,*
   545 U.S. 409, 125 S.Ct. 2444, 2449, 162 L.Ed.2d 390 (2005) .................................... 3

*Griffin v. HSBC Mortg. Servs., Inc.,*
   No. 4:14-CV-00132-DMB, 2015 WL 4041657 (N.D. Miss. July 1, 2015) .............................. 8

*In re Hinsley,* 201 F.3d 638 (5th Cir. 2000) ..................................................................... 4

*Moore v. Kayport Package Express, Inc.,* 885 F.2d 531 (9th Cir.1989) ........................ 9

*S. Leasing Partners, Ltd. v. McMullan*, 801 F.2d 783 (5th Cir. 1986) .......................... 9

*Sahlein v. Red Oak Capital, Inc.,*
   No. 3:13-CV-00067-DMB-JM, 2014 WL 3046477 (N.D. Miss. July 3, 2014) ........................ 8

*Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellog Corp.,*
   305 F.3d 1293 (11th Cir. 2002) .................................................................................... 8

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) ...................................................... 9

*United States ex rel. Colquitt v. Abbott Labs.*, 858 F.3d 365 (5th Cir. 2017) ................. 5

*United States ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325 (5th Cir.2003) ................... 10

*United States ex rel. Grubbs v. Kanneganti,* 565 F.3d 180 (5th Cir. 2009) .................... 5, 8, 9, 10

*United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.,*
   238 F.Supp.2d 258 (D.D.C.2002) ................................................................................. 5

*United States ex rel. Rafizadeh v. Cont'l Common, Inc.,*
   553 F.3d 869 (5th Cir.2008) ........................................................................................ 10

*United States ex rel. Wall v. Vista Hospice Care, Inc.,*
   778 F. Supp. 2d 709 (N.D. Tex. 2011) ......................................................................... 5

*United States v. BNP Paribas SA*, 884 F. Supp. 2d 589 (S.D. Tex. 2012) ..................... 4

**Statutes**

31 U.S.C. § 3731(b) ................................................................................................................... 1

**Rules**

Rule 8, Fed. R. Civ. P. ........................................................................................................... 8, 9

Rule 9(b), Fed. R. Civ. P. .................................................................................................... 5, 9, 10

Rule 11, Fed. R. Civ. P. ........................................................................................................... 9

**Regulations**

31 C.F.R. § 210 ................................................................................................................. *passim*

## I. INTRODUCTION

The Defendants' Omnibus Motion ("Motion") (Doc. 92) regarding "limitations" issues (Doc. 96, "SOL Brief") contains two requests for relief. First, Defendant Compass Bank seeks dismissal of the claims against it in the Amended Complaint (Doc. 18, "Am. Comp.") because the examples of purported wrongdoing that Relator alleges involved claims that, according to Compass Bank, the Government's right to recovery under certain administrative processes is somehow time-barred. Compass Bank is incorrect. As explained in more detail below the administrative remedy cited by Compass Bank does not apply to post-death benefits accepted by any of the defendant Banks after they received a Death Notification Entry ("DNE"). Since Relator Hendrickson's allegations in this case involve only post-death payments received by the defendant Banks after the date they received a DNE for the various deceased beneficiaries (Am. Comp. at ¶¶ 60-66, 70-74), the formal reclamation process is irrelevant. Moreover, as Relator explains more fully in response to the Defendants' brief regarding "standing" issues (Doc. 95), the Government is not precluded from seeking redress for the Defendants' misconduct under the False Claims Act merely because some other remedies, administrative or otherwise, may be available.

Second, beyond this issue that is specific only to one Defendant, all Defendants request the dismissal of all claims asserted by Relator that accrued on or before February 1, 2010, which is prior to the six year limitation period found in the False Claims Act (31 U.S.C. § 3731(b).) This aspect of the Motion should be denied as well. To the extent the Defendants are simply asking the Court to confirm that the False Claims Act has a six-year statute of limitations period, there is no need for the Court to grant such uncontested relief. Moreover, as to the specific false claims by the Defendants that they argue fall outside the limitations period, there are issues of fact that

obviously cannot be addressed at the pleading stage.  All grounds in the Motion are without merit and should be denied.

## II.    FACTS

The regulatory background supporting Relator's allegations are more fully explained in Relator's response to the Defendants' brief regarding Civil Rules 12(b)(6) and 9(b).  (Doc. 94.) To avoid duplication, Relator incorporates that full discussion herein, but will highlight issues specific to this motion.  In sum, the Defendants' promised to follow the Department of Treasury Automated Clearing House ("ACH") regulations in order to participate in the distribution of Federal agency recurring benefit payments. (Am. Comp. at ¶¶ 17-20.) Though the regulatory authority for the Banks to distribute recurring benefit payments for an account holder ends immediately upon the death of the beneficiary, (Am. Compl. at ¶ 24, *quoting* 31 C.F.R. § 210.4(c)(2),  the Banks routinely distributed Federal agency recurring benefit payments to their account holders despite having actual knowledge that such beneficiaries were deceased. (Am. Comp. at ¶¶ 60-66, 70-74.)   By this conduct, the Banks violated an explicit ACH regulation requiring them, upon learning that a beneficiary has died, to return immediately all benefit payments received after learning of the death, and to inform all affected Federal agencies of the death.  (31 C.F.R. § 210.10(a).)  The Banks routinely ignored this duty.

The Banks do highlight ACH regulations allowing the Banks a chance to limit their liability for repayment of post-death benefits as part of a formal "Notice of Reclamation" process. (Am. Comp. at ¶¶ 56-59.)  But this formal reclamation process—which the Banks regularly abused by falsely certifying the date they learned of an account holder's death (Am. Comp. at ¶ 59)—does not apply to post-death payments made after the Banks have actual knowledge that a person is deceased. (31 C.F.R. § 210.10(a).)  It only applies to recurring benefit payments that are made

after a beneficiary dies, but before the Banks learn of that death. (Am. Comp. at ¶ 58, *quoting* 31 C.F.R. § 210(a).)  The Banks simply cannot rely on this "administrative" process to avoid any of their liability in this case.

## III.   ARGUMENT

### A.   The 120-Day Deadline Does Not Apply to Post-Death Benefits Accepted by the Banks After They Received a DNE

Defendants' SOL Brief repeats arguments regarding the 120-day time limit of 31 C.F.R. § 210.10(d) which are more fully presented in Defendants' Rule 12(b)(6) and Rule 9(b) brief (Doc. 94).  This 120-day time limit is not a statute of limitations that is applicable to this matter.

As explained more fully in Relator's 9(b) Response (Doc. 102), the Banks cannot avoid their liability with reliance on the formal reclamation process found in the ACH regulations.  The reclamation process only applies to post-death payments occurring before the Banks had knowledge that an account holder had died. (31 C.F.R. 210.10(a).)  Thus, the Banks are wrong to rely on any deadlines associated with the formal reclamation procedures, which can only serve to potentially limit the Banks' liability for post-death benefits received <u>before</u> the Banks learned of the death. Again, Relator Hendrickson's allegations in this case involve only post-death payments received by the Banks <u>after</u> the date they received a DNE for the various deceased beneficiaries (Am. Comp. at ¶¶ 60-66, 70-74).  For the reasons expressed in Relator's Rule 9(b) response and above, the "120-day" administrative deadline relied upon by the Banks is simply inapplicable to the present matter.

### B.   Statute of Limitations Issues Cannot be Decided on the Motion to Dismiss Because There Are Contested Issues of Fact

The six-year statute of limitations period is to be computed from the time of the commission of the act. 31 U.S.C. § 3131(b). *See also Graham County Soil & Water Conservation District v. United States ex rel. Wilson,* 545 U.S. 409, 125 S.Ct. 2444, 2449, 162 L.Ed.2d 390

(2005) Each false claim for payment constitutes a separate violation of the FCA. "[T]he statute of limitations is an affirmative defense that 'places the burden of proof on the party pleading it.'" *Frame v. City of Arlington,* 657 F.3d 215, 239 (5th Cir. 2011) (*quoting F.T.C. v. Nat'l Bus. Consultants, Inc.,* 376 F.3d 317, 322 (5th Cir. 2004); *In re Hinsley,* 201 F.3d 638, 644-45 (5th Cir. 2000)).

Because statute of limitations issues often depend upon contested questions of fact, however, the court should hesitate to dismiss a complaint on statute of limitations grounds based solely on the face of the complaint. *Firestone v. Firestone,* 76 F.3d 1205, 1209 (D.C.Cir. 1996). Rather, the court should grant a motion to dismiss only if the complaint on its face is conclusively time-barred. *Id.*; *Doe v. Dep't of Justice,* 753 F.2d 1092, 1115 (D.C.Cir.1985). *See United States v. BNP Paribas SA*, 884 F. Supp. 2d 589, 600 (S.D. Tex. 2012) (finding the statute of limitations issue was a question of fact that could not be answered based solely on the pleadings before discovery has begun). Here, there are contested questions of fact which prevent the dismissal of claims on a statute of limitations basis. Moreover, Defendants' misconstruction of Relator's allegations does not satisfy the Defendants' burden of proof in moving for dismissal of claims on a statute of limitations basis.

### C.    Claims Against Compass Bank Should Not Be Dismissed.

In the Amended Complaint, Relator alleges a ranging and years-long fraudulent scheme pursued by all of the defendant Banks. Relator included a few examples to illustrate the mechanics of the misconduct. (Doc. 18, ¶ 74). Defendant Compass Bank attempts to reduce the allegations of the alleged fraudulent scheme as it involves Compass Bank down to the single example presented by the Relator. (Doc. 96 p. 9.) However, the examples of Compass Bank's (and all the other Banks') misconduct is explicitly not to be substituted for the scope of Relator's allegations and his personal knowledge of the Banks' fraud. As Relator Hendrickson pled, the examples "are

-4-

not offered to demonstrate the scope of Relator's personal knowledge,…. Rather, these examples are offered simply to confirm that each of the Defendant banks acted as an RDFI for receipt of recurring benefit payments from Government agencies, and thus each falls within the scope of the misconduct alleged herein[.]" (Am. Comp. at ¶ 74.)

Moreover, it is not alleged that this is definitively the last false claim by Compass Bank. It is certainly not alleged that the overarching scheme by the defendant Banks to defraud the Government discontinued after any of the examples. As detailed in Relator's Amended Complaint as well as in Relator's 9(b) response, the allegations regarding the overarching scheme are in fact set down with great particularity regarding all aspects of the "who, what, when, where, and how of the alleged fraud."[1] *Quoting United States ex rel. Colquitt v. Abbott Labs*., 858 F.3d 365, 371 (5th Cir. 2017). These allegations are alleged against all the defendant Banks.[2] Compass Bank's attempt to paint Relator's pleading as one which "avoid[s] pleading any facts against Compass

---

[1] The appropriate standard to be applied is more fully discussed in Relator's 9(b) response. In brief, this Court has noted that "the Fifth Circuit has also stated that the 'time, place, contents, and identity standard is not a straitjacket for Rule 9(b),' concluding that Rule 9(b) is context-specific and flexible." *United States ex rel. Wall v. Vista Hospice Care, Inc.*, 778 F. Supp. 2d 709, 715 (N.D. Tex. 2011), *quoting United States ex rel. Grubbs v. Kanneganti,* 565 F.3d 180, 190 (5th Cir. 2009). Thus, excruciating detail—such as "exact dollar amounts, billing numbers, or dates"—are not required at the pleading stage, because requiring such detail "is one small step shy of requiring production of actual documentation with the complaint, a level of proof not demanded to win at trial and significantly more than any federal pleading rule contemplates." *Grubbs*, 565 F.3d at 190, *citing United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 238 F.Supp.2d 258, 269 (D.D.C.2002).

[2] Defendants' joinder argument in footnote 7 of the SOL Brief is incorrect. There are abundant questions of law and fact in this manner that are common to the Defendants. At the very least, ACH regulations make DNEs universally applicable such that when the defendant Banks receive a DNE from one Federal agency notifying them of the death of a beneficiary, that DNE is deemed to have given the Banks actual knowledge of the death of the beneficiary for purposes of all other recurring benefit payments from all other Federal agencies. (Am. Comp. at ¶ 35). In any case, this issue is not properly raised before this Court on this Motion.

Bank from within the limitations period" (Doc. 96, p. 8), conveniently ignores the great bulk of Relator's Amended Complaint.

Also as pled in the Amended Complaint, in addition to continuing improperly to accept recurring benefit payments for deceased individuals, the Banks would compound this fraudulent conduct in response to the Treasury Department's Notice of Reclamation.  As part of that process, a Federal agency tried to determine how much money the Banks had accepted even after its beneficiary had died, and the Banks would routinely give a false date of their knowledge to try and limit their liability for improper post-death payments in response to the Notice of Reclamation. (Am. Comp. at ¶¶ 64, 74.)  Thus, even as to the one example in the Amended Complaint, Compass Bank may be liable.  That is, if Compass Bank received a Notice of Reclamation regarding "PS" and falsely certified that they did not know the person was deceased or gave a false date of Compass Bank's knowledge of the account holder's death, this false certification may well have occurred during the six-year statute of limitations.

All these issues present contested questions of fact which cannot be answered solely on the pleadings before discovery has begun.  Moreover, Defendants' misconstruction of Relator's allegations does not satisfy the Defendants' burden of proof in moving for dismissal of claims on a statute of limitations basis.

### D. Allegations Regarding Activity Examples Prior to February 2, 2010 Do Not Warrant a Dismissal of Claims.

All of the defendant Banks seek partial dismissal of the Amended Complaint regarding activity alleged to have occurred on or before February 1, 2010.  This is not grounds for this Court to grant any affirmative relief.  The False Claims Act has a stated six-year statute of limitations for the claims in this non-intervened case, and Relator's allegations do not seek to evade that proscription.

Moreover, for the reasons articulated above, though, there are certainly issues of fact regarding when the Banks may have engaged in their misconduct which cannot be answered solely on the pleadings before discovery has begun.  As explained above, the defendant Banks cannot avoid liability by focusing on the few examples of the Banks' misconduct pled by Relator. These few examples are explicitly not to be substituted for the scope of Relator's allegations and his personal knowledge of the Banks' fraud. (Am. Comp. at ¶ 74.)  Instead, the balance of the allegations in the Amended Complaint demonstrate a fraudulent scheme of "numerous instances, since at least 2010, involving the Defendant banks' wrongfully receiving funds from a Federal agency after the death of a customer." (Am. Comp. at ¶ 74.)

**E.     Information Regarding Wrongdoing Prior to February 2, 2010 is Properly Before this Court.**

Moreover, Relator is not "blatantly overreaching" in referencing purported wrongdoing prior to February 2, 2010.  The Government may revisit its decision to intervene and if it does intervene, by Defendants' own admission, the statute of limitations would increase to 10 years.

In addition, these violations have probative value regardless of their ability to be included as timely claims. These examples indicate a pattern of wrongdoing and support Relator's overarching allegation.  This scheme is succinctly laid out in Relator's Amended Complaint as well as in Relator's 9(b) response (see specifically pp. 26-27) and the examples that Relator provides are evidence of this scheme. [3]

---

[3] Defendants' concern for "fading memories" notwithstanding (Doc. 96 pp.5-6), the defendant Banks are, of course, aware that their potential liability to the Government for false claims extends to the entire 10-year period. It is the Banks responsibility to keep records accordingly.

**F.     The Relator's Allegations, Including Particular Details of a Scheme to Submit False Claims, Are Sufficient to Survive the Motion to Dismiss**

To survive a motion to dismiss, a relator need not "allege the details of an actually submitted false claim," but may instead "survive by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *United States ex rel. Grubbs v. Kanneganti,* 565 F.3d 180 (5th Cir. 2009).

A slightly older but mostly contemporaneous specific example of wrongdoing that alleges the details of an actually submitted false claim (such as any pre-February 2010 example in ¶ 74 of the Amended Complaint) is certainly reliable indicia that leads to a strong inference that false claims were actually submitted.  Moreover, that the Relator has alleged the sufficient particular details of a scheme is apparent from the Amended Complaint.  These are hardly the "shotgun pleadings" as Defendants accuse. (Doc. 96 p. 6.)

Indeed, the use of the term "shotgun pleadings" is not at all applicable to the current matter. A review of the cases cited by the Defendant (Doc. 96 pp. 6-7), indicates that shotgun pleadings are characterized as complaints "contain[ing] several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." *Griffin v. HSBC Mortg. Servs., Inc.*, No. 4:14-CV-00132-DMB, 2015 WL 4041657, at *5 (N.D. Miss. July 1, 2015) (concerned with pleadings which run afoul of Rule 8 and *quoting Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellog Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002)).

But Defendants here are not pleading that Relator's allegations do not meet the standard of Rule 8 nor have Defendants raised any issue regarding the manner in which the counts have been pled.  Similarly this is not a situation where "the sending of a letter" or something similar is being generally attributed to all the Defendants as in *Sahlein v. Red Oak Capital, Inc.*, No. 3:13-CV-

-8-

00067-DMB-JM, 2014 WL 3046477, at *4 (N.D. Miss. July 3, 2014). Instead, the actions alleged include the routine acceptance and distribution of Federal agency recurring benefit payments into accounts for individuals that the Banks knew were deceased (Am. Comp. at ¶¶ 44-49; 60-74.); and the continual certification of the Banks compliance with ACH regulations despite continuing to accept and distribute benefit payments to individuals known to be deceased. (Am. Comp. at ¶¶ 60-74.). These are actions in which all the Banks are complicit.

Defendants also cite *S. Leasing Partners, Ltd. v. McMullan*, 801 F.2d 783, 788 (5th Cir. 1986) which uses the term shotgun pleadings to apply to the type of allegations which cannot even meet the standards of Rule 11. That is certainly not the situation here. Relator Edward Hendrickson was investigator for the Department of Veterans Affairs, Office of Inspector General. Substantiating his allegations of the scheme described above are numerous examples of the Defendants receiving unauthorized recurring benefit payments from a second federal agency after benefit payments from SSA were terminated due to the beneficiary's death. (Doc. 18 ¶ 74.) The Relator has therefore satisfied both elements articulated in *Grubbs* as well as satisfying Rule 9(b) and of course the lower bars of Rules 8 and 11.

Defendants' citation of *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) to complain about lumping of Defendants (Doc. 96 p. 7) is also misapplied. As *Swartz* explained, to avoid lumping defendants, "[i]n the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, "identif[y] the role of [each] defendant[] in the alleged fraudulent scheme." *quoting Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir.1989). Defendants' roles as RDFI's have been clearly explained in the present matter.[4] All of the

---

[4] In accusing the Relator of shotgun pleadings, Defendants also resort to hyperbole that "every bank in the United States could be a defendant in this lawsuit." (Doc. 96 p. 8.) This completely ignores the Relator's allegations regarding RDFIs.

Defendants are being accused of the actions alleged and the Amended Complaint has informed each Defendant of the nature of its alleged participation in the fraud.

Defendant also argues that documents supposedly demonstrating the alleged fraud are already in the possession of the Government[5] and therefore *Grubbs* does not apply. (Doc. 96 p. 10.)  This ignores the fact that only the Banks know when they received the SSA DNEs, when they stopped submitting false claims, and, if they received a Notice of Reclamation, whether their response (if any response was submitted) was truthful.  This is not a situation, then "where the documents containing the requisite information are in the possession of, and presumably available from, other sources." *United States ex rel. Rafizadeh v. Cont'l Common, Inc.*, 553 F.3d 869, 873 n. 6 (5th Cir.2008).  Instead, the facts relating to the fraud are "peculiarly within the perpetrator's knowledge" *United States ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 330 (5th Cir.2003) and the relaxed application of Rule 9(b) articulated in *Grubbs* applies.

## IV.    CONCLUSION

For these reasons, the Court should not grant this Motion to Dismiss the Amended Complaint in whole or in part based upon the statute of limitations nor for any lack of particularity under Rule 9(b).

Respectfully submitted,

**HELMER MARTINS RICE & POPHAM CO., L.P.A.**

By: s/ James B. Helmer, Jr.
James B. Helmer (*pro hac vice*)
Julie Webster Popham (*pro hac vice*)
Robert M. Rice (*pro hac vice*)
600 Vine Street, Suite 2704
Cincinnati, OH 45202
Phone:  (513) 421-2400
Fax:  (513) 421-7902
support@fcalawfirm.com

---

[5] Moreover, the issue of knowledge of the Government is yet another contested issue of fact which is best suited for discovery and should not be decided on a motion to dismiss.

**MILLER KEFFER & PEDIGO PLLC**

K. Lawson Pedigo
Texas State Bar No. 15716500
3400 Carlisle Street, Suite 550
Dallas, Texas  75204
Phone:  (214) 696-2050
Fax:  (214) 696-2482
klpedigo@mkp-law.net


**SAFIRSTEIN METCALF LLP**

Peter Safirstein (*pro hac vice*)
1250 Broadway, 27th floor
New York, NY 10001
Phone: (212) 201-2855
psafirstein@safirsteinmetcalf.com

*Attorneys for Relator Edward Hendrickson*


## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2017, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants listed for this matter.


                            s/ *Peter Safirstein*
                            Peter Safirstein