IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. EDWARD HENDRICKSON, | § | |
| | § | |
| Plaintiff-Relator | § | |
| | § | |
| v. | § | Civil Action No. 3:16-cv-292-M |
| | § | |
| BANK OF AMERICA, N.A., et al., | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR**
**RULE 12(B)(1) MOTION TO DISMISS FOR LACK OF STANDING**

## TABLE OF CONTENTS

ARGUMENT ........ 1

I. Relator Fails To Rebut Defendants' Showing That The Right To Collect Government Damages In Connection With ACH Entries Was Previously Assigned To The Federal Reserve Bank, A Non-Governmental Entity. ........ 1

II. Part 210's Remedial Provisions Specifically And Comprehensively Address The Conduct Asserted By Relator And Displace Any Potential Remedy Under the FCA. ........ 4

CONCLUSION ........ 7

# TABLE OF AUTHORITIES

**Cases**

*HCSC-Laundry v. United States*,
450 U.S. 1 (1981) .......... 6

*Little v. Shell Expl. & Prod. Co.*,
690 F.3d 282 (5th Cir. 2012) .......... 3

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
566 U.S. 639 (2012) .......... 6

*Sprint Commc'ns. Co., L.P. v. APCC Servs., Inc.*,
554 U.S. 269 (2008) .......... 2

*United States ex rel. Fallon v. Accudyne Corp.,*
880 F. Supp. 636 (W.D. Wis. 1995) .......... 6, 7

*United States ex rel. Sutton v. Double Day Office Servs., Inc.*,
121 F.3d 531 (9th Cir. 1997) .......... 6

*Vt. Agency of Nat. Res. v. United States ex rel. Stevens*,
529 U.S. 765 (2000) .......... 2, 3, 4

**Other Authorities**

Black's Law Dictionary (10th Ed. 2014) .......... 2

Food, Drug, and Cosmetic Act § 307(b)(1)(A) .......... 3

**Rules**

31 C.F.R. § 210.1 .......... 1

31 C.F.R. § 210.10(e) .......... 1, 3

31 C.F.R. § 210.3(a) .......... 4

31 C.F.R. § 210.8(b) .......... 5

31 C.F.R. §§ 210.10-11 .......... 5

31 C.F.R. §210.2(c) .......... 3

31 U.S.C. § 321 .......... 6

Relator's Opposition to Defendants' Motion to Dismiss for Lack of Standing does not cure Relator's lack of Article III standing. First, Relator fails to rebut that the Treasury's regulations—31 C.F.R. § 210.1, *et seq*. ("Part 210")—assign the right to collect government losses, *i.e.* damages, to the Federal Reserve Bank. As a result, the sole basis for Article III standing under Supreme Court precedent as a "partial assignee" of government damages in a False Claims Act ("FCA") action is not available to him. Second, Relator's claims are premised on the comprehensive regulatory scheme governing federal agency use of the ACH network and its unique remedial scheme controlling the rights of federal agencies for "all" ACH entries. Relator alleges conduct that is fully contemplated and addressed by Part 210. Stated differently, there is nothing alleged that moves this case outside the exclusive remedies Part 210 provides and, as a result, Relator's allegations, at best, would establish a breach of contract claim. Relator does not have standing for breach of contract claims, and this action should be dismissed.

## ARGUMENT

### I. Relator Fails To Rebut Defendants' Showing That The Right To Collect Government Damages In Connection With ACH Entries Was Previously Assigned To The Federal Reserve Bank, A Non-Governmental Entity.

Relator dismisses in conclusory fashion the notion that he lacks Article III standing, but the only basis for him to have standing to bring an FCA claim—as held by the Supreme Court—was already assigned elsewhere. Part 210 assigns the Federal Reserve Bank the right to collect damages in connection with all government payments over the ACH network, stating:

> If an RDFI does not return the full amount of the outstanding total **or any other amount for which the RDFI is liable** under this subpart in a timely manner, the Federal Government will collect the amount outstanding **by instructing the appropriate Federal Reserve Bank** to debit the account utilized by the RDFI.

31 C.F.R. § 210.10(e). With that assignment already made, Relator lacks standing here.

Pursuant to controlling United States Supreme Court authority, an FCA relator has standing to sue on behalf of the government **only** as a "partial assignee" of the government's

"damages claim." *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 773 (2000). Relator's Opposition fails to address this argument head on. Rather, Relator repeatedly contorts and misstates Defendants' position to invoke straw man arguments and to avoid the fact that he does not have Article III standing to bring this case.

Relator first argues that there was no assignment to the Federal Reserve Bank because Part 210 does not use the term "assignment." (Opp. at 14.) This argument ignores that although the FCA **never** uses the word "assignment," the Supreme Court nevertheless held in *Stevens* that a relator's standing to bring a claim under the FCA exists only because a relator is an **assignee** of the government's claim for damages. *See* 529 U.S. at 773. Plainly, under *Stevens*, there is no requirement that Part 210 use the term "assignment" to effect an assignment by operation of law to the Federal Reserve Bank. Also, Relator does not rebut Defendants' authority showing that this is unquestionably an assignment. (*See* Opening Br. at 14-15.) The transfer of a right to collect damages owed is indisputably an assignment. *See Sprint Commc'ns. Co., L.P. v. APCC Servs., Inc*., 554 U.S. 269, 282 (2008) ("Lawsuits by assignees, including assignees for collection only, are 'cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process.'") (quoting *Stevens*, 529 U.S. at 777-78); *see also* Black's Law Dictionary (10th Ed. 2014) ("assignment" is the "transfer of rights or property"). Relator has failed to show that Part 210 did not transfer the government's right to collect damages to the Federal Reserve Bank.

Relator's second argument also ignores *Stevens*, misstates the nature of the assignment detailed by the Supreme Court—the right to collect damages—and asserts that there has been no assignment to the Federal Reserve Bank because Part 210 gives the Federal Reserve Bank no authority to investigate, conduct discovery, or pursue false claims. (Opp. at 14.) But this assertion is simply beside the point. A relator has standing under the FCA **only** as an assignee of

the government's damages claim. *See Stevens*, 529 U.S. at 773; *see also Little v. Shell Expl. & Prod. Co.*, 690 F.3d 282, 285 (5th Cir. 2012) (representational standing for relators "exists because a *qui tam* relator is, in effect, suing as a *partial* assignee of the United States' **claim for damages**") (emphasis added). The Supreme Court made no mention of an assigned right to investigate or conduct discovery, as the Relator argues here. *See Stevens*, 529 U.S. at 772-74. Moreover, Relator ignores that Part 210 assigns a greater remedial right than mere investigatory powers—it authorizes the Federal Reserve Bank to affirmatively take funds from the RDFI's account. *See* 31 C.F.R. § 210.10(e). There is no credibility to Relator's position, as the government is always able to collect any damages it suffers—without even bringing a lawsuit.

Relator's third argument mistakes the role of the Federal Reserve Bank in the ACH system. Relator asserts that "[n]o regulatory provision … states or even hints" at the conclusion that the Federal Reserve Bank is not a government agency. (Opp. at 15.) This assertion is contradicted by the very regulations on which Relator bases his claims. Part 210 defines the term "Agency," stating "[t]he term agency does not include a Federal Reserve Bank." 31 C.F.R. §210.2(c). Despite this unequivocal language, Relator argues that any such regulation would be invalid "because prosecuting fraud against United States agencies is within the sole purview of the United States Department of Justice." (Opp. at 15.) Relator's reasoning is misplaced. The issue of whether prosecution of fraud is within the sole purview of the Department of Justice is irrelevant to the vital issue here, *i.e.*, whether this Relator has standing to bring this lawsuit as a partial assignee of the government's damages claim.[1] Part 210 assigned the right to collect the government's damages from ACH entries to the Federal Reserve Bank, a non-governmental

---

1 If civil penalties for fraud were in the exclusive purview of the Department of Justice, as Relator claims, *qui tam* suits would be a nullity, and other government agencies could not impose penalties for fraud despite having statutory authority to do so. *See, e.g.,* Food, Drug, and Cosmetic Act § 307(b)(1)(A) (authorizing Secretary of Health and Human Services to impose penalties for knowing false statements and/or misrepresentations of material fact).

entity, long before this Relator filed this action. As Defendants established, Supreme Court precedent recognizes the bedrock principle of assignment that first in time is first in right. (*See* Opening Br. at 16.) Given this prior assignment, Relator has no standing to bring this claim.

Relator's fourth argument is also misleading. Relator frames Defendants' position as one arguing that "Relator has not been assigned a right to pursue the Government's administrative remedies." (Opp. at 15.) This is categorically **not** Defendants' position. Given this distortion, it bears repeating that Relator cannot be an assignee of any government claim to damages in connection with ACH entries because the right to collect damages was assigned prior to Relator filing suit. In an effort to support this misplaced argument, Relator cites *Stevens* for the proposition that—separate and apart from government damages—a relator has standing to pursue treble damages, fines and penalties. (Opp. at 16 (citing *Stevens*, 529 U.S. at 775, 777, nn. 6-7).) However, the portions of *Stevens* that Relator relies on make reference to an English statute passed in 1331 and laws passed by the First Continental Congress in 1789, which do not support Relator's flawed argument. The Supreme Court referred to these laws merely as part of the historical recitation of the history of *qui tam* and similar suits, and the Court's ruling in *Stevens* was unequivocal that a relator receives a partial assignment of the government's right to damages and nothing more. *See Stevens* 529 U.S. at 773. There is, therefore, no legitimate basis for Relator to claim he is the assignee of a government claim for fines and penalties—he could not be the transferee of an inherently governmental responsibility. (*See* Opening Br. at 17.)

## II. Part 210's Remedial Provisions Specifically And Comprehensively Address The Conduct Asserted By Relator And Displace Any Potential Remedy Under the FCA.

Part 210's scope is broad: "The rights and obligations of the United States and Federal Reserve Banks with respect to **all government entries** … **are governed by this part**, which has the force and effect of Federal law." 31 C.F.R. § 210.3(a) (emphasis added). Part 210 lays out a

comprehensive scheme that fully addresses the conduct Relator alleges: Subpart A proscribes the exclusive remedy for the recovery of recurring benefit payments made by government agencies to deceased recipients (*see* 31 C.F.R. § 210.8(b)); and Subpart B sets the amount and method for recovery of any loss in connection with the reclamation procedure, including reclamations for payments after DNEs were sent and reclamations related to inaccurate certifications. *See* 31 C.F.R. §§ 210.10-11.[2] Thus, even taking Relator's allegations as true, the conduct that Relator points to—and any consequences therefrom—are completely covered by Part 210 and, at most, potentially establish a breach of contract claim for failure to comply with the regulations.[3] For Relator to take his allegations out of the regulatory remedial process and have standing to proceed here, he would have to allege more than noncompliance or imperfect compliance with the regulations. *See* 31 C.F.R. §§ 210.10-11. But Relator does not and cannot do so. Count I falls squarely within the regulatory remedial framework. Count II merely asserts that the Court should infer a false certification,[4] without explanation of how this inaccuracy takes this allegation out of the regulatory process (which specifically addresses inaccurate responses) and into FCA liability. In short, nothing Relator alleges brings this case within the realm of FCA liability, and Relator does not have standing to bring such a breach of contract case on behalf of the government. (Opening Br. at 12.)

---

2 Further evidencing the conclusive intent of Part 210 is the directive in the Green Book that once an RDFI's liability is established, the "debit action [taken by the Federal Reserve Bank] will be **final**." Green Book at 5-5 (emphasis added).

3 As Relator concedes, acceptance of recurring monthly benefit payments results in a contractual agreement between the agency and an RDFI. (*See* Am. Compl. at ¶ 28). Even if Defendants failed to do what was required by either Subpart A or Subpart B—which Defendants vigorously dispute—the result can be no more than a breach of the contractual obligation to comply with these regulatory directives.

4 Relator asks for the Court to infer a false certification on an NOR whenever a bank fails to return the full amount of post-death payments.

Relator **never** addresses the express language of § 210.3 or Part 210's comprehensive remedial scheme. Instead, Relator cites case law purportedly holding that regulatory violations are always the basis for FCA claims and that Defendants must establish that the FCA remedy is displaced or preempted. (Opp. at 10-13.) But, these cases do not involve the unique circumstances here. Indeed, the regulatory scheme in Part 210 is unique and like no other regulatory matter previously addressed in the context of a FCA case. The FCA is intended to protect the Treasury. But, it is the Treasury (through the Congressional authority granted to it) that promulgated rules to address the ACH system. *See* 31 U.S.C. § 321. Part 210 is part of the legal framework established by Title 31, along with the FCA. It is in that context that the government states that the "rights" for "all Government entries" are governed by Part 210, and not the FCA portion of Title 31.[5] Part 210 and the FCA are directed to the same (i) purpose and (ii) conduct: protecting public funds and recovering overpayments.

Relator's preemption position is far too sweeping. Under his approach, the FCA could never be displaced unless Congress explicitly states as much. But this is wrong. Statutory displacement turns on a careful analysis of the language and legislative intent of the two authorities involved in each case. Each case is *sui generis*, and a generalized assertion that the FCA is never preempted simply cannot be made, as the cases cited by Relator amply illustrate.[6]

The decision in *Accudyne*, cited by Relator, proves the error of Relator's argument. The plaintiff alleged that the defendant violated the FCA by including false information in documents

---

5 *See RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (citing *HCSC-Laundry v. United States*, 450 U.S. 1, 6 (1981) (the specific governs the general "particularly when the two are interrelated and closely positioned, both in fact being parts of [the same statutory scheme]")) (alteration in original).

6 *See, e.g., United States ex rel. Sutton v. Double Day Office Servs., Inc.*, 121 F.3d 531, 534 (9th Cir. 1997) (comparing statutory frameworks before concluding that FCA claim and Service Contract Act claims are based on different conduct); *United States ex rel. Fallon v. Accudyne Corp.,* 880 F. Supp. 636, 639 (W.D. Wis. 1995) (noting that FCA may be displaced by authority addressing the same conduct and holding hold no preemption of FCA by environmental laws because "the FCA and environmental statutes provide remedies for entirely different conduct").

submitted to obtain government contracts. *See* 880 F. Supp. at 638. The defendant moved to dismiss, arguing that because the alleged conduct was subject to a comprehensive regulatory scheme, the relator could not bring a *qui tam* action under the FCA. *See id.* at 638-39. The court recognized that "[n]otwithstanding that a claim falls within the literal reading of a statute, it is sometimes held to be unavailable because another more detailed statute evidences Congressional intent to pre-empt the more general claim which relates to conduct for which the other statute provides a detailed remedy." *Id.* at 639. The court examined the environmental regulatory scheme and held that this rule did not apply because "the FCA and the environmental statutes provide remedies for entirely different conduct." *Id.* The court contrasted that scheme with the remedies set forth in the Internal Revenue code—which governed the "same conduct" as the FCA, protecting the Treasury from loss—and noted that they are outside the scope of the FCA even in the absence of an express exclusion of the Internal Revenue Code in the FCA. *See id.* ("[I]t follows that Congress would not intend to duplicate those remedies with an FCA claim arising from the identical conduct. Not surprisingly, such claims are now expressly excluded from application of the FCA."). This rationale applies here. Part 210 is housed with the same legal framework protecting public funds as the FCA. Part 210 is expressly directed towards remedying and recouping any loss to government agencies premised on the conduct alleged by the Relator, and application of the FCA in this context is therefore, redundant and displaced.

## CONCLUSION

For the foregoing reasons and the reasons set forth in their Opening Brief, Defendants respectfully request that the Court enter an Order dismissing Relator's Amended Complaint with prejudice because there is not subject matter jurisdiction due to Relator's lack of standing.

Respectfully submitted,

/s/ Justin R. Opitz
Justin R. Opitz
State Bar No. 24051140
McGuireWoods LLP
2000 McKinney Avenue, Suite 1400
Dallas, Texas 75201
(214) 932-6400
Fax: (214) 932-6499
jopitz@mcguirewoods.com

Jeremy S. Byrum
McGuire Woods, LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219-3916
(804) 775-4305
Fax: (804) 698-2080
jbyrum@mcguirewoods.com

ATTORNEYS FOR WELLS FARGO BANK, N.A., including as successor in interest to WACHOVIA BANK, N.A.

/s/ Thomas V. Panoff
Lucia Nale
(Bar No. 6201684IL)
Thomas V. Panoff
(Bar No. 6283695IL)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600 (Telephone)
(312) 706-8297 (Facsimile)

Keith M. Aurzada
(Bar No. 24009880)
Bradley J. Purcell
(Bar No. 24063965)
BRYAN CAVE LLP
2200 Ross Avenue, STE 3300
Dallas, Texas 75201
Telephone 214-721-8000
Facsimile 214-721-8100

ATTORNEYS FOR DEFENDANT CITIBANK N.A.

/s/ Jason M. Hopkins
David W Klaudt
State Bar No. 00796073
Jason M. Hopkins
State Bar No. 24059969
Greenberg Traurig LLP
2200 Ross Avenue, Suite 5200
Dallas, TX 75201
(214) 665-3616
Fax: (214) 665-3601
klaudtd@gtlaw.com
hopkinsjm@gtlaw.com

Matthew J Cannon
Greenberg Traurig, LLP
77 West Wacker Drive, Suite 3100
Chicago, IL 60601
312-456-8400
cannonm@gtlaw.com

ATTORNEYS FOR JPMORGAN CHASE BANK

/s/ Gregory C. Cook
Gregory C. Cook
State Bar No. 24084974
Steve Corhern
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, AL 35201-0306
(205) 251-8100
Fax: (205) 226-8799
gcook@balch.com

Michael A. Logan
State Bar No. 12497500
C. Jeffrey Novel
State Bar No. 24037198
Kane Russell Coleman Logan, PC
3700 Thanksgiving Tower
1601 Elm Street
Dallas, Texas 75201
(214) 777-4200
Fax: (214) 777-4299
mlogan@krcl.com
jnovel@krcl.com

ATTORNEYS FOR COMPASS BANK

/s/ William P. Huttenbach
William P Huttenbach
State Bar No. 24002330
Joseph R Anderson
State Bar No. 24054578
Hirsch & Westheimer PC
1415 Louisiana, 36th Floor
Houston, TX 77002
(713) 220-9184
Fax: 713-223-9319
phuttenbach@hirschwest.com

ATTORNEYS FOR THE AMERICAN NATIONAL BANK OF TEXAS

/s/ Michael J. Bronson
Michael J. Bronson
Laurie A. Witek
Dinsmore & Shohl LLP
255 E. Fifth St., Suite 1900
Cincinnati, OH 45202
(513) 977-8200
Fax: (513) 977-8141
michael.bronson@dinsmore.com
laurie.witek@dinsmore.com

Anthony J. Campiti
State Bar No. 00798092
Thompson & Knight LLP
1722 Routh St., Suite 1500
Dallas, TX 75201-2533
(214) 969-1700
Fax: (214) 969-1751
tony.campiti@tklaw.com

ATTORNEYS FOR FIFTH THIRD BANK

/s/ M. Chad Berry
Stacy B. Loftin
State Bar No. 12489500
M. Chad Berry
State Bar No. 24001730
Adams, Lynch & Loftin, P.C.
3950 Highway 360
Grapevine, Texas 76051-6741
(817) 552-7742
Fax: (817) 328-2942
sbl@all-lawfirm.com
cberry@all-lawfirm.com

ATTORNEYS FOR FROST BANK

/s/ Kenneth E. Broughton, Jr.
Kenneth E Broughton , Jr
State Bar No. 03087250
Michael H. Bernick
State Bar No. 24078227
Reed Smith LLP
811 Main Street , Suite 1700
Houston, TX 77002
(713) 469-3819
Fax: (713) 469-3899
kbroughton@reedsmith.com
mbernick@reedsmith.com

Roy W. Arnold
Reed Smith LLP
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
(412) 288-3916
rarnold@reedsmith.com

ATTORNEYS FOR MANUFACTURERS AND TRADERS TRUST COMPANY

/s/ Thomas B. Walsh, IV
Thomas B. Walsh, IV
State Bar No. 00785173
Winston & Strawn LLP
2501 N. Harwood St., 17th Floor
Dallas, TX 75201
(214) 453-6460
Fax: (214) 453-6400
twalsh@winston.com

ATTORNEYS FOR BANK OF AMERICA, N.A., COMERICA BANK, PNC BANK N.A.

/s/ Joseph B. VanFleet
Joseph B. VanFleet
Timothy D Gronewold
Howard & Howard Attorneys PLLC
211 Fulton Street, Suite 600
Peoria, IL 61602
(309) 672-1483
Fax: 309-672-1568
jvanfleet@howardandhoward.com
tgronewold@howardandhoward.com

Brian J Hurst
State Bar No. 10313300
Nicholas O Kennedy
Baker & McKenzie, LLP
2300 Trammell Crow Center
2001 Ross Ave
Dallas, TX 75201
(214) 978-3075
Fax: 214/978-3099
brian.hurst@bakermckenzie.com

ATTORNEYS FOR CENTRUE BANK

/s/ Michael S. Smiley
Michael S Smiley
State Bar No. 18526550
Christopher Jason Fenton
State Bar No. 24087505
Underwood Law Firm, P.C.
PO Box 9158
Amarillo, TX 79105-9158
(806) 376-5613
Fax: (806) 349-9470
mike.smiley@uwlaw.com
jason.fenton@uwlaw.com

Cara Doak Kennemer
State Bar No. 24036489
Underwood Law Firm, P.C.
1008 Macon Street, Suite 101
Fort Worth, TX 76102
(817) 885-7529
Fax: (817) 977-0880
cara.kennemer@uwlaw.com

ATTORNEYS FOR AMARILLO NATIONAL BANK

/s/ Craig C. Martin
Craig C. Martin
Illinois Bar No. 6201581
Michele L. Slachetka
Illinois Bar No. 6297640
Jenner & Block LLP
353 N. Clark Street
Chicago, IL 60654-3456
(312) 222-9350
Fax: (312) 527-0484
cmartin@jenner.com
mslachetka@jenner.com

/s/ Ronald W. Breaux
Ronald W Breaux
State Bar No. 02937200
Haynes and Boone, LLP
2323 Victory Ave, Suite 700
Dallas, TX 75219-7673
(214) 651-5688
Fax: (214) 651-5940
ron.breaux@haynesboone.com

ATTORNEYS FOR THE NORTHERN TRUST COMPANY

/s/ Daniel P. Callahan
Daniel P Callahan
State Bar No. 03648700
Kessler Collins
2100 Ross Ave, Suite 750
Dallas, TX 75201
(214) 379-0722
Fax: (214) 373-4714 FAX
dpc@kesslercollins.com

William Scott Turnbull
Crary Buchanan PA
759 SW Federal Highway, Suite 106
Stuart, FL 34994
(772) 287-2600
Fax: 772-223-4360
Turnbull@crarybuchanan.com

ATTORNEYS FOR SEACOST NATIONAL BANK

**CERTIFICATE OF SERVICE**

I certify that I served a copy of the foregoing on all counsel of record via the Courts' CM/ECF system on December 20, 2017.

/s/ Jason M. Hopkins
Jason M. Hopkins