## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* EDWARD HENDRICKSON, <br><br>        Plaintiff-Relator, <br><br> v. <br><br> BANK OF AMERICA, N.A., WELLS FARGO BANK, N.A., CITIBANK, N.A., COMERICA BANK, N.A., WELLS FARGO BANK, N.A., as successor in interest to WACHOVIA BANK, N.A., JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, COMPASS BANK, MANUFACTURERS & TRADERS TRUST COMPANY, SEACOAST NATIONAL BANK, FIFTH THIRD BANK, PNC BANK, N.A., THE NORTHERN TRUST COMPANY, FROST BANK, THE AMERICAN NATIONAL BANK OF TEXAS, CENTRUE BANK, and AMARILLO NATIONAL BANK, <br><br>        Defendants. | Case No. 3:16-CV-292-M |

## REPLY IN SUPPORT OF THE DEFENDANTS' MOTION TO DISMISS THE RELATOR'S AMENDED COMPLAINT ON PUBLIC DISCLOSURE GROUNDS

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ......................................................................................................... 1

II.   ARGUMENT ................................................................................................................ 1

   A.   Hendrickson's attempted narrowing of his legal theory does not avoid dismissal............. 1

      1.   The Amended Complaint is broader than Hendrickson now argues. ........................... 2

      2.   The "narrowed" two-agency theory is a smokescreen...................................................... 3

      3.   Even the "narrowed" two-agency theory is publicly disclosed. .................................... 4

   B.   Hendrickson misstates the law—fraud need not be expressly disclosed. .......................... 7

   C.   Hendrickson further misstates the law because disclosures need not name specific
   defendants. ......................................................................................................................... 9

   D.   Defendants' sources qualify as public disclosures of Hendrickson's theory.................... 13

      1.   The 1987 Banking Circular, Green Book, and SSA Manual System qualify as
      administrative reports.................................................................................................... 13

      2.   The sources need not specifically allege fraud or name Defendants. .......................... 14

      3.   The cases are appropriate public disclosures. ............................................................. 14

   E.   Hendrickson is not an original source of the publicly disclosed claims. ......................... 14

III.  CONCLUSION & PRAYER ...................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*United States ex rel. Black v. Health & Hosp. Corp. of Marion Cty.,*
  494 F. App'x 285 (4th Cir. 2012) .................................................................8, 9, 10

*United States ex rel. Colquitt v. Abbott Labs.,*
  858 F.3d 365 (5th Cir. 2017) .......................................................................7

*United States ex rel. Colquitt v. Abbott Labs.,*
  864 F. Supp. 2d 499 (N.D. Tex. 2012) .........................................................9, 13

*United States ex rel. Cooper v. Blue Cross & Blue Shield of Fl., Inc.,*
  19 F.3d 562 (11th Cir.1994) ........................................................................10, 13

*In re Enron Corp. Sec. Derivative & ERISA Litig.,*
  761 F. Supp. 2d 504 (S.D. Tex. 2011) .........................................................3

*United States ex rel. Findley v. FPC–Boron Employees' Club,*
  105 F.3d 675 (D.C. Cir.1997) .......................................................................14

*United States ex rel. Fine v. Chevron, U.S.A., Inc.,*
  72 F.3d 740 (9th Cir. 1995) ..........................................................................15

*United States ex rel. Fine v. Sandia Corp.,*
  70 F.3d 568 (10th Cir. 1995) ........................................................................9, 15

*United States ex rel. Gear v. Emergency Med. Assocs. of Ill., Inc.,*
  436 F.3d 726 (7th Cir. 2006) ........................................................................9, 10, 13

*Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson,*
  559 U.S. 280 (2010) .....................................................................................8

*United States. ex rel. Heath v. Dallas/Fort Worth Int'l Airport Bd.,*
  3:99-CV-0100-M, 2004 WL 1197483 (N.D. Tex. May 28, 2004) .................8

*United States ex rel. Jamison v. McKesson Corp.,*
  649 F.3d 322 (5th Cir. 2011) ........................................................... *passim*

*Little v. Shell Expl. & Prod. Co.,*
  690 F.3d 282 (5th Cir. 2012) ........................................................................15

*In re Natural Gas Royalties,*
  562 F.3d 1032 (10th Cir. 2009) ....................................................................11

iii

*In re Natural Gas Royalties Qui Tam Litig.*,
    467 F. Supp. 2d 1117 (D. Wyo. 2006)............................................................................10, 11

*United States ex rel. Pritzker v. Sodexho, Inc.*,
    364 F. App'x 787 (3d Cir. 2010) ...........................................................................................10

*United States ex rel. Reagan v. East Texas Med. Ctr. Reg'l Healthcare Sys.*,
    384 F.3d 168 (5th Cir. 2004) .................................................................................................13

*Schindler Elevator Corp. v. United States ex rel. Kirk*,
    563 U.S. 401 (2011)..............................................................................................................13

*United States ex rel. Settlemire v. District of Columbia*,
    198 F.3d 913 (D.C. Cir. 1999) ................................................................................................4

*United States ex rel. Solomon v. Lockheed Martin Corp.*,
    No. 17-10046, slip op. (5th Cir. Dec. 19, 2017) ................................................................7, 9

*United States ex rel. Springfield Terminal Ry. Co. v. Quinn*,
    14 F.3d 645 (D.C. Cir. 1994)..................................................................................................7

*Stennett v. Premier Rehab., LLC*,
    479 F. App'x 631 (5th Cir. 2012) ...........................................................................................4

*United States v. CSL Behring, L.L.C.*,
    855 F.3d 935 (8th Cir. 2017) .................................................................................................12

*United States v. Sodexho, Inc.*,
    No. 03-6003, 2009 WL 579380 (E.D. Pa. Mar. 6, 2009) ................................................10, 12

**Statutes**

31 U.S.C. § 3730(e)(4)...........................................................................................................1, 4, 9

**Other Authorities**

31 C.F.R. Part 210..........................................................................................................................13

31 C.F.R. § 210.7(f) .........................................................................................................................4

Rule 12(b)(6)....................................................................................................................................1

## I.   INTRODUCTION

The Defendant Banks' public disclosure brief ("Brief") identified documents that publicly disclosed the critical elements of Hendrickson's alleged fraud, necessitating a dismissal under the FCA's public disclosure bar. 31 U.S.C. § 3730(e)(4). Hoping to sidestep these disclosures, Hendrickson responds by purporting to narrow the Amended Complaint's allegations, while also misstating the applicable law. But the Response fails to overcome the fundamental shortcoming of his Amended Complaint, which offers nothing in the way of new information not already previously publicly disclosed. All of Hendrickson's claims should be dismissed with prejudice.[1]

## II.   ARGUMENT

### A.  Hendrickson's attempted narrowing of his legal theory does not avoid dismissal.

The Amended Complaint asserts two theories, briefly summarized as: (1) banks allegedly did not immediately return post-death payments made by government agencies via direct deposit to beneficiaries whom the banks allegedly knew were dead, (Am. Compl. ¶¶ 26, 30, 46-48, 74, 77), and (2) banks allegedly failed to return the full amount of those payments in response to a notice of reclamation, (Am. Compl. ¶¶ 74, 83-85). (*See also* Doc. 93, Brief at 2 (describing the "Deposit Fraud Theory" and the "Reclamation Fraud Theory").)

Because the Defendants' Brief demonstrated that Hendrickson's claims have been publicly disclosed, Hendrickson's Response (Doc. 106) attempts to narrow his claim to (i) the SSA providing a Death Notification Entry ("DNE") to a bank and (ii) a *second* federal agency then sending the bank payments for the deceased beneficiary, which the bank then allegedly fails to return. (Response at 3-5.) But this purported reformulation does not avoid the public disclosures.

---

[1] This Court may elect to treat the Defendants' motion as either a Rule 12(b)(6) or a motion for summary judgment. (See Brief at 21 n.9.) Under either standard, the claims here should be dismissed with prejudice.

### 1. *The Amended Complaint is broader than Hendrickson now argues.*

Hendrickson acknowledges that a "public disclosure analysis begins with *an accurate statement* of the particular allegations and transactions of fraudulent conduct *as pled in the Amended Complaint*." (Response at 2 (emphasis added).) Despite this acknowledgement, Hendrickson's Response does not accurately state his Amended Complaint's claims. As an initial matter, Hendrickson *never states* in the Amended Complaint that a DNE is *only* provided by the SSA. Instead, he specifically alleges that "currently OPM and RRB are additional Federal benefit paying agencies utilizing the DNE." (Am. Compl. ¶ 34.) Moreover, the Amended Complaint never specifies that Hendrickson's claims are limited to (i) a DNE being provided by only the SSA to a specific bank and (ii) a *second* federal agency thereafter sending payments to that deceased beneficiary's bank, which then fails to return the money. Instead, Hendrickson repeatedly describes his claims as applying to *all* benefit payments made by "*a* federal agency," alleging:

- that the Defendant Banks violated their contracts with the United States by accepting "recurring benefit payments *from a Federal agency* that are then deposited into the account of a beneficiary known to be deceased;"

- that the Defendant Banks violated their contracts with the United States "also by failing to return the full amount of such unauthorized payments to *the Government agency*;"

- that the Defendant Banks "are fully liable to the United States for *all post-death benefits* paid to a recurring payment beneficiary after the date the Defendant banks know that the beneficiary is dead;"

- that he is personally aware of "Defendant banks' wrongfully receiving funds from *a Federal agency* after the death of a customer."

(*Id*. ¶¶ 30, 44, 52, 74 (emphasis added).) Hendrickson also attempts to put a finer point on his DNE allegations by arguing that each Defendant Bank received a DNE from the SSA. (Response at 5, 8.) But the Amended Complaint is not so specific, as Hendrickson alleges generally that "a DNE *would have been* received" pursuant to the SSA's normal process. (Am. Compl. ¶ 41 (emphasis added).) Moreover, "it is axiomatic that a complaint cannot be amended by briefs in opposition to

2

a motion to dismiss." *In re Enron Corp. Sec. Derivative & ERISA Litig.*, 761 F. Supp. 2d 504, 566 (S.D. Tex. 2011) (internal quotations omitted).

Consistent with the Amended Complaint's sweeping allegations, the Brief demonstrated how multiple sources publicly disclosed <u>both</u> the Deposit Fraud Theory and the Reclamation Fraud Theory, (Brief at 2, 27-35, 39).

## 2. *The "narrowed" two-agency theory is a smokescreen.*

Hendrickson's attempt in his Response to narrow his claims to evade the public disclosures must fail. Hendrickson mischaracterizes his Amended Complaint by asserting that his allegations are limited to "the very specific situation in which the beneficiary account holders at the defendant Banks received recurring monthly payments through the ACH network from *two* federal agencies—with at least one from the SSA." (Response at 3.) But in reality, Hendrickson's reformulation does nothing more than use the SSA's sending of a DNE as a trigger of alleged "actual knowledge" by the Defendant Banks of the death of a beneficiary. In Hendrickson's own words, "SSA is an agency that timely determines and *timely notifies financial institutions of a beneficiary's death*" through the alleged sending of a DNE, thereby providing "actual notice to the Banks that their authority to act for the beneficiary ended and thus the Banks could no longer legally receive or retain a single dollar on behalf of the deceased account holder." (*Id.* at 3-4 (emphasis added).)

In other words, Hendrickson's purported reformulation is a smokescreen and his claim *continues to be* that a bank violates the FCA if it accepts a direct deposit benefit payment for a deceased beneficiary who the bank allegedly knows is dead and the bank fails to immediately return the payment. It is immaterial whether the bank learned of the death of the beneficiary through (a) a DNE from the SSA or (b) another source—the key to the alleged fraud under Hendrickson's claims as pled is that the bank knew of the beneficiary's death and yet continued to

accept benefit payments. *See United States ex rel. Settlemire v. District of Columbia*, 198 F.3d 913, 919 (D.C. Cir. 1999) ("[A] relator's ability to reveal specific instances of fraud where the general practice has already been publicly disclosed is insufficient to prevent operation of the jurisdictional bar."). Moreover, multiple public sources have disclosed the issue of banks accepting post-death payments after learning of the beneficiary's death—which is the heart of Hendrickson's FCA claim. (*See, e.g.*, Brief at 27-30.) And contrary to Hendrickson's claims that "not a single page" of the Appendix discloses alleged "misconduct committed by any bank" by virtue of accepting payments for beneficiaries known to be deceased, (Response at 2), the 1987 Banking Circular discloses that the Office of the Comptroller of the Currency (the prudential regulator for all national banks) believed that banks were engaged in such conduct.[2] (App. 26-27.) Accordingly, the public disclosures were sufficient to notify the government of the same issues that Hendrickson alleges, and his claims should be dismissed.

### 3.   *Even the "narrowed" two-agency theory is publicly disclosed.*

Even accepting Hendrickson's purported limitation of his claims to situations involving "*two* federal agencies—with at least one from the SSA" (Response at 3), his claims should still be dismissed because the public sources disclose this theory with the same level of detail that Hendrickson describes his claims in the Amended Complaint. *United States ex rel. Jamison v.*

---

[2] Hendrickson tries to distinguish the 1987 Banking Circular on the grounds that (1) it simply warns against violating the law and (2) it applies to different regulations. But in fact, it discloses that the Office of the Comptroller of the Currency ("OCC") believed that national banks were violating federal regulations by accepting payments by direct deposit "after a financial institution has learned of the death" and then failing to immediately return the amounts, letting them instead accumulate in holding/suspense accounts until a reclamation notice was received. (App. 26-27.) The Circular also makes clear that the OCC was complaining of banks allegedly violating 31 C.F.R. § 210.7(f), which required a bank to "promptly return to the government through the Federal Reserve Bank" any payment received "after the death or legal incapacity of the recipient or death of the beneficiary." (Brief at 12 n.5 (comparing the current ACH regulations to the EFT regulations in the Circular).) These are substantially similar to the ACH regulations at issue here. A public disclosure of substantially the same allegations or transactions is sufficient to bar Hendrickson's claims. 31 U.S.C. § 3730(e)(4); *Stennett v. Premier Rehab., LLC*, 479 F. App'x 631, 634–35 (5th Cir. 2012).

4

*McKesson Corp.*, 649 F.3d 322, 327 (5th Cir. 2011) ("[T]he publicly disclosed allegations or transactions need only be as broad and as detailed as those in the relator's complaint.").

Under Hendrickson's theory of how DNEs function, the death of a beneficiary <u>always results</u> in the SSA's transmitting a DNE to a bank shortly after the SSA learns of a death. (Response at 3; Am. Compl. ¶ 39.) The Defendants' Brief directly addresses this point, (Brief at 2), and demonstrates that Hendrickson's allegation that "a DNE *would have been* received" is itself publicly disclosed by the Green Book and by the SSA POMS. (Brief at 30; App. 98, 141.)

Defendants have identified several sources that disclose banks accepting post-death payments from a second federal agency, which under Hendrickson's theory must have occurred after these banks received DNEs from the SSA (the so-called first federal agency).

For example, the 2015 O'Carroll Statement, (App. 202-07), discloses the death of a beneficiary who died in February 1997, which under Hendrickson's theory necessarily resulted in a DNE being sent by the SSA to the bank around the same time. (Am. Compl. ¶ 39.)[3] Significantly, this public document discloses that the beneficiary received *both SSA and VA benefits* and yet the SSA and the VA made payments ($205,000 by the SSA and $22,000 by the VA) for many years past the beneficiary's death, thereby squarely disclosing Hendrickson's theory of alleged fraud.

Additionally, in *United States v. Morris*, (App. 24-25), a beneficiary died in May 2003. 284 F. App'x 762, 763 (11th Cir. 2008). The beneficiary's daughter verified the death to the VA Insurance Office (analogous to the first federal agency) in 2003, and the VA Insurance Office stopped making deposits to the beneficiary's account. *Id.* However, the VA (analogous to the

---

[3] It is of no moment that this public disclosure does not specifically mention a DNE since the Amended Complaint's "examples" of fraud similarly omit the DNE and ask the Court to infer its existence. (Am. Compl. 74(a)–(w).)

second federal agency)[4] continued to deposit the beneficiary's "other benefits" to the beneficiary's account for another three years after the beneficiary's death. *Id.* This disclosure does not require an assumption that a DNE provided notice of death. Instead, this disclosure unequivocally states that the bank knew of the beneficiary's prior death and that the VA continued to make deposits into the beneficiary's account, yet the bank failed to advise the VA of the death, instead telling the beneficiary's daughter that it was her responsibility to do so. *Id.* By not notifying the VA of the mother's death and continuing to accept payments into her account, the bank committed the same conduct alleged under Hendrickson's Deposit Fraud Theory.

As a third example, Defendants have also identified a public source that disclosed *the very first specific example that Hendrickson cites in his Amended Complaint regarding VA overpayments*. (*Compare* 2015 VA OIG Highlights at App. 76, *with* Am. Compl. ¶ 74(a).)[5] Applying Hendrickson's assumption from his Amended Complaint that the bank would have received an SSA DNE, it is evident that the 2015 VA OIG Highlights alone discloses two agencies—the SSA and the VA—in the same level of detail and *regarding the same example* used in the Amended Complaint.

Finally, the Washington Post Article, (App. 208-213), also discloses Hendrickson's narrowed theory in the same level of detail as the Amended Complaint. The Post reported in 2013 that "[i]n 2011, the Office of Personnel Management's inspector general reported that $120 million a year was being wrongly paid to dead retirees." (App. 212.) As retirees, the beneficiaries would

---

[4] A fair reading of *Morris* shows that the court distinguished between the VA Insurance Office and the VA as two distinct entities.

[5] In his Response, Hendrickson applies his assumption that a DNE was absolutely sent to Bank of America in this instance and accordingly asserts that Bank of America received a DNE from the SSA (the first federal agency) for this beneficiary in 1998 (resulting in alleged prior knowledge by Bank of America of this beneficiary's death in 1998 under Hendrickson's theory) but yet Bank of America continued to receive additional benefit payments from the VA subsequent to the beneficiary's death. (Response at 22-23.) The same is true in the Amended Complaint.

have received benefits from the SSA (the first federal agency), and, under Hendrickson's theory, a DNE would have been sent to the applicable banks by the SSA at the time of such retirees' deaths. (Am. Compl. ¶ 39.) This news article publicly discloses that the OPM (the second federal agency) continued to make $120 million a year in post-death payments, thereby publicly disclosing Hendrickson's narrowed theory at the same level of detail as the Amended Complaint.

**B.  Hendrickson misstates the law—fraud need not be expressly disclosed.**

Hendrickson incorrectly asserts that public disclosures must allege fraud. That is not the law. *See United States ex rel. Solomon v. Lockheed Martin Corp.,* No. 17-10046, slip op. at 8 (5th Cir. Dec. 19, 2017) ("The public disclosures need not expressly allege fraud. The question is whether the relator *could have* synthesized an inference of fraud from the public disclosures."); *United States ex rel. Colquitt v. Abbott Labs.*, 858 F.3d 365, 374 (5th Cir. 2017) (stating that allegations are publicly disclosed when "'readers or listeners may infer . . . the conclusion that fraud has been committed.'" (quoting *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 654 (D.C. Cir. 1994)). The Fifth Circuit has "recently adopted" the *Springfield Terminal* approach, under which disclosures need only contain sufficient information to give rise to an inference of fraud by revealing that the defendants' alleged factual statements are different from the true state of facts. *Solomon*, slip op. at 7 (citing *Colquitt,* 858 F.3d at 374). Under the *Springfield Terminal* equation, where $X+Y = Z$, only the elements of the alleged fraud ($X$ and $Y$) need be disclosed, not the *allegation of fraud* ($Z$). 14 F.3d at 654-55. If $X$ and $Y$ are disclosed, the supposed fraud has necessarily been disclosed, as "fraud" requires the "recognition of two elements: a misrepresented state of facts and a true state of facts." *Id.* at 655. In other words, when the $X$ and $Y$ are already publicly disclosed, a qui tam action must be dismissed if it merely provides the $Z$, such as has occurred here. *Id.* at 654-55.

Defendants' public disclosures reveal the elements of Hendrickson's alleged fraud, as abundantly demonstrated in the Brief. In addition, this Court has previously inferred allegations of fraud from information that would strongly indicate that a defendant was not complying with required procedures. *United States. ex rel. Heath v. Dallas/Fort Worth Int'l Airport Bd.*, 3:99-CV-0100-M, 2004 WL 1197483, at *6 (N.D. Tex. May 28, 2004) (Lynn, J.) (determining that "one could likely infer fraud" from information "that 60% of glycol used was entering the IW System, and of that amount, 20%-40% was escaping into waters of the United States" because this information suggests that correct procedures were not being followed, such that any certification of complying with the law "would give rise to an inference of fraud"). Similarly here, the multiple public disclosures of instances in which banks (i) accepted payments from various agencies, including the VA, despite allegedly knowing of the beneficiaries' deaths, and (ii) failed to return the full amount of those payments (including in response to a notice of reclamation), are the same facts from which Hendrickson argues that the Court can infer that Defendants violated the FCA.[6]

Relator's argument that a specific allegation of fraud is required is contrary to the Fifth Circuit's acknowledgement that a public disclosure need only "set the government on the trail of fraud." *Jamison*, 649 F.3d at 329 (internal quotation and citation omitted). The Fourth Circuit explained that such an argument runs counter to the Supreme Court's direction in *Graham County,* which "had recognized that the first prong of the public disclosure bar is satisfied if the disclosure 'put[s] the Federal Government on notice of a potential fraud.'" *U.S. ex rel. Black v. Health & Hosp. Corp. of Marion Cty.*, 494 F. App'x 285, 293–94 (4th Cir. 2012) (quoting *Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 291 (2010)). Moreover,

---

[6] If this case were allowed to proceed to be tried on the merits, which it should not be, Defendant Banks would demonstrate that Hendrickson's theories have no merit.

the Fourth Circuit noted that, under *Graham County*, even SEC forms that did not "alert federal agencies to wrongdoing" counted as public disclosures because they provided "'easily accessible notice of [ ] transactions ... from which an investigation could have begun or developed.'" *Id.* (quoting *United States ex rel. Jones v. Collegiate Funding Servs.*, 469 F. App'x 244, 257 (4th Cir. 2012)). Similarly, the Fifth Circuit is "not concerned . . . with the overall probability of someone inferring fraudulent activity from the public disclosures. The focus is on whether they *could have* made the inference." *Solomon*, slip op. at 10 (emphasis in original). As shown above, under Hendrickson's theories, one could have made the requisite inference from the public disclosures.[7]

### C. Hendrickson further misstates the law because disclosures need not name specific defendants.

Hendrickson misstates the law by arguing that the public disclosures must name specific Defendants. But defendants or transactions need not be specifically identified, so long as sufficient information exists to place the government on notice of the potential fraud. *Jamison*, 649 F.3d at 239 ("[T]he public disclosures need not name particular defendants so long as they alerted the government to the industry-wide nature of the fraud and enabled the government to readily identify wrongdoers through an investigation." (internal quotation and citation omitted)); *see also United States ex rel. Gear v. Emergency Med. Assocs. of Ill., Inc.*, 436 F.3d 726, 729 (7th Cir. 2006); *United States ex rel. Fine v. Sandia Corp.*, 70 F.3d 568, 571 (10th Cir. 1995) (disclosure of conduct by two other laboratories was sufficient as a public disclosure of similar conduct at an unnamed lab); *United States ex rel. Colquitt v. Abbott Labs.*, 864 F. Supp. 2d 499, 522 (N.D. Tex. 2012)

---

[7] Relator is also incorrect in arguing that the Defendant Banks cannot deny they have participated in an alleged fraud while also claiming that "everyone knows [Defendant Banks] are participating in the alleged fraud." (Response at 6.) The law does not require a defendant to admit to fraud to prevail on public disclosure grounds. Instead, all a defendant needs to demonstrate is that the relator's allegations are based upon publicly disclosed information. *Jamison*, 649 F.3d at 332; 31 U.S.C. § 3730(e)(4). Here, the Defendant Banks have appropriately denied that they have participated in an alleged fraud but have also demonstrated that Hendrickson's allegations are based upon publicly disclosed information.

(explaining that a wrongdoer "need not necessarily be identified by name" so long as the "publicly available information discloses that every member of an identifiable group or industry committed the alleged wrongdoing, and the defendant is a member of that group").

*Gear* held that "[i]ndustry-wide public disclosures bar qui tam actions against any defendant who is directly identifiable from the public disclosures." *Gear*, 436 F.3d at 729. The key is whether the government could identify the wrongdoers from the public disclosures. *In re Natural Gas Royalties Qui Tam Litig.*, 467 F. Supp. 2d 1117, 1136 (D. Wyo. 2006), *aff'd* 562 F.3d 1032 (10th Cir. 2009). The number of wrongdoers, whether it be hundreds or thousands, is immaterial. *Id.* Thus, disclosures that showed the government was generally aware of Medicaid financing schemes used by states were enough to put the government on the trail of a particular defendant located in one state, although the defendant was not named in any of the public disclosures. *Black*, 494 F. App'x at 293–94.

On the other hand, in *Cooper*, where the government would have had difficulty identifying all the wrongdoers engaged in fraudulent activity, the disclosure was insufficient. *United States ex rel. Cooper v. Blue Cross & Blue Shield of Fl., Inc.*, 19 F.3d 562 (11th Cir.1994). As one court explained, the way to reconcile *Gear* and *Natural Gas Royalties* with *Cooper* is in examining how easily the government could identify specific wrongdoers from the disclosures. *United States v. Sodexho, Inc.*, No. 03-6003, 2009 WL 579380, at *10–12 (E.D. Pa. Mar. 6, 2009), aff'd sub nom. *United States ex rel. Pritzker v. Sodexho, Inc.*, 364 F. App'x 787 (3d Cir. 2010).

In determining whether disclosures make it sufficiently easy to identify wrongdoers, the Fifth Circuit considers the disclosures in the context of the detail contained in (or lacking from) the relator's complaint. For example, in *Jamison*, although the disclosures did *not* name the defendants, the Fifth Circuit found that the relator's suit was based upon the public disclosures,

and the court therefore affirmed the dismissal of the relator's suit. 649 F.3d at 329-31. Hendrickson, however, selectively quotes *Jamison* to suggest that the Fifth Circuit requires defendant-specific disclosures and precludes a public disclosure when a large industry is involved. (Response at 11-12.) But Hendrickson omits the sentence from the paragraph immediately preceding his cited quote, where the Fifth Circuit approvingly quoted *Natural Gas Royalties* for the proposition that "the public disclosures need not name particular defendants so long as they 'alerted the government to the industry-wide nature of the fraud and enabled the government to readily identify wrongdoers through an investigation.'" *Jamison*, 649 F.3d at 331 (quoting *Natural Gas Royalties*, 562 F.3d at 1039). Hendrickson also ignores that the Fifth Circuit held that the relator's claims *were based* on the public disclosures, despite acknowledging that the documents did not specifically name defendants and that it would be "exceedingly difficult" to identify the particular defendants from the public disclosures. *Id.* at 331-32. The court reasoned that it is not "examining the public disclosures in the abstract" and must instead compare them to the relator's allegations. *Id.* at 330. Because the relator's allegations were just as general as those in the public disclosures and the relator had arbitrarily selected a large group of defendants from the industry, the Fifth Circuit concluded that the relator's allegations were based on the public disclosures. *Id.* at 331-32.[8]

The same is true here. Hendrickson has arbitrarily joined a large number of banks with a complaint that makes general, universally applicable allegations. As shown in the Brief and above, the identified public sources disclose the alleged fraud in at least the same level of detail as the

---

[8] Hendrickson quoted *Jamison*'s language that something in the disclosures must "'set the government on the trail of'" the defendants. (Response at 11 (quoting *Jamison*, 649 F.3d at 330)). Hendrickson therefore is clearly aware that the Fifth Circuit does not require the naming of defendants, but he nevertheless seeks to impose the incorrect standard that "the disclosure must name the defendant." (Doc 106 at 11.) Here, if Hendrickson's theories of alleged fraud are correct, the public disclosures identified are more than sufficient to set the government on the trail of the Defendant Banks, especially if the government were to investigate its ACH benefit payment records, DNEs, and NORs. Hendrickson even claims *he identified the Defendant Banks* <u>*when he was a government investigator*</u>.

11

Amended Complaint. Just as in *Jamison*, "one could have produced the substance of the complaint merely by synthesizing the public disclosures' description of the" alleged scheme. *Id.* at 331.

As the Eighth Circuit recently explained, after reviewing the case law of multiple circuits, different public sources are not to be viewed in isolation; rather, a court considers public disclosures contained in separate sources "as a whole" to determine if they "collectively provide information" about a scheme such that a defendant can be identified. *United States v. CSL Behring, L.L.C.*, 855 F.3d 935, 941–46 (8th Cir. 2017) (citations omitted). Additionally, courts have found that the government can identify a defendant if the government could identify the wrongdoer by examining its records. In *Sodexho*, for example, public disclosures rendered it "relatively easy for anyone, including the Government, to discern which [defendants] engaged in this practice merely by looking at their contracts . . . and comparing them to the RFPs." *Sodexho*, 2009 WL 579380, at *11. The court also noted that, like the Defendants here, the defendants in that case were not "obscure companies conducting minor transactions," but rather major players in their industry, and easily identifiable in the alleged scheme. *Id.* Similarly here, by comparing government records of payment and dates that DNEs were allegedly sent to banks, the public disclosures make it "relatively easy" for government agencies to discern which banks are engaged in the practice of (i) accepting post-death payments and not returning them immediately and (ii) failing to return the full amount of those payments (including in response to notices of reclamation).

This conclusion is bolstered by Hendrickson's argument that "abundant questions of law and fact . . . are common to the Defendants" and that "ACH Regulations make DNEs universally applicable" (*i.e.*, ACH regulations apply to all banks that accept ACH payments). (Hendrickson's Memorandum in Opposition (Doc. 105) at 5 n.2.) Separately, Hendrickson claims that the DNE process was the key fact that "crystalized" his discovery of alleged fraud by the Defendants when

he worked as a fraud investigator. (Response at 29.) Because one common fact led to Hendrickson's "universally applicable" allegation of fraud, the public disclosures here are more similar to those in *Gear* (where similarly universal revelations were sufficient to directly identify wrongdoers) than to those in *Cooper* (where the disclosures were not sufficiently universal to identify the wrongdoers).

### D.  Defendants' sources qualify as public disclosures of Hendrickson's theory.

#### 1.  *The 1987 Banking Circular, Green Book, and SSA Manual System qualify as administrative reports.*

Misapplying the definition of an administrative report, Hendrickson claims the 1987 Federal Banking Circular, chapters 4 and 5 of the Green Book, and the SSA Manual System (Exs. G, K, L, and M) do not qualify as public disclosures. This Court has interpreted the controlling precedent as requiring only two elements for a document to serve as an administrative report: "*Reagan* and *Schindler* suggest that, to be an administrative report within the meaning of the FCA, a document must (1) constitute official government action and (2) provide information." *Colquitt*, 864 F. Supp. 2d at 518 (citing *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 407 (2011), and *United States ex rel. Reagan v. East Texas Med. Ctr. Reg'l Healthcare Sys.*, 384 F.3d 168, 176 (5th Cir. 2004)). These two requirements are unquestionably met here. The SSA Manual System is issued as an official government action by the SSA and provides information about the DNE process. The 1987 Banking Circular and the Green Book were both official government actions by the Treasury and provide guidance to banks participating in direct deposit of government benefits. Thus, all these documents qualify as administrative reports.[9]

---

[9] Hendrickson confusingly argues that the court should also disregard the Green Book and SSA Manual System because they are merely "rules and regulations" for participation in the ACH network. (Response at 18.) But those regulations are found in 31 C.F.R. Part 210. Hendrickson confuses regulations with guidance documents, which qualify as administrative reports here.

### 2.   *The sources need not specifically allege fraud or name Defendants.*

Hendrickson criticizes eight government reports—Exhibits H, I, J, N, O, P, Q, T—primarily on the basis that they do not contain "allegations of fraud" or do not mention Defendants. Similarly, Hendrickson criticizes the media articles—Exhibits S and R—because they do not contain "allegations of fraud" or do not mention Defendants. As explained above in this Reply, the standard for public disclosure does not require the documents to mention fraud or specific Defendants. Hendrickson is similarly mistaken in dismissively describing the public disclosures as being limited to reporting facts about government agencies and thus bearing little relevance to this case. To the contrary, the sources are fatal to Hendrickson's case because they disclose the theory of his allegations of fraud in the same level of detail as in his Amended Complaint.

### 3.   *The cases are appropriate public disclosures.*

Hendrickson dismisses the court cases, *Walker*, *Thomas*, *Derryberry*, and *Morris*, by criticizing their age and reading them narrowly. But as set out in the Brief, these cases disclose key elements of Hendrickson's alleged fraud. (Brief at 9-11, 28-32.)

Hendrickson's criticism of the sources' age is also misplaced. Courts have relied on disclosures that were over 20 or 45 years old. *United States ex rel. Findley v. FPC–Boron Employees' Club*, 105 F.3d 675 (D.C. Cir.1997) (relying on disclosures from 1952 and 1974 to bar claims brought in the 1990s). Hendrickson cites no authority to support his assertion.

### E.   Hendrickson is not an original source of the publicly disclosed claims.

Hendrickson's Response does not address Defendants' argument that because Hendrickson lacks direct knowledge of payments by agencies other than the VA, he cannot be an original source about allegations concerning post-death payments from the SSA, OPM, and RRB. (*See* Brief at 36-37.) Hendrickson has therefore failed to meet his burden to show he is an original source of any of these allegations.

Hendrickson does not deny he would be disqualified as an "original source" if his VA job required him to report the alleged fraud. *See Little v. Shell Expl. & Prod. Co.*, 690 F.3d 282, 294 (5th Cir. 2012). Instead, he minimizes his duties at the VA, claiming he could investigate only "individual(s) who had access to bank accounts" but not "fraud by financial institutions." (Response at 29.) Yet he cites nothing to support this limitation. Like the OIG employee in *Fine*, Hendrickson was "compelled to disclose fraud by the very terms of his employment" and could not "voluntarily" disclose the fraud to his employer. *United States ex rel. Fine v. Chevron, U.S.A., Inc.*, 72 F.3d 740, 743-44 (9th Cir. 1995). Hendrickson's unsupported assertions of limited job duties cannot satisfy his burden to "produce evidence sufficient to show" a genuine issue of material fact. *Jamison*, 649 F.3d at 327.

At any rate, Hendrickson is estopped from making this argument. He admitted in the Amended Complaint that he was an investigator who spent "years of investigating fraud against the United States," (Am. Compl. ¶ 64), including fraud investigations of the Defendants:

- His job responsibilities as a fraud investigator included "investigating and attempting to recoup recurring benefit payments the VA made on behalf of its benefit recipients to RDFIs (including the Defendant banks) after the beneficiary had died." (*Id.* ¶ 60.)

- He discovered Defendants' alleged fraud during his OIG investigations. (*Id.* ¶¶ 9, 61.)

- As part of his fraud investigation, he requested Notices of Reclamations from the Defendant banks, discovering allegedly false certifications. (*Id.* ¶ 64.)

- He conferred with other VA investigators who "had learned of the same fraudulent conduct engaged in by the Defendants banks as complained herein . . . ." (*Id.* ¶ 62.)

These admissions demonstrate that investigating financial institutions fell within the scope of his duties. (*Id.* ¶ 64.) In short, he is not an original source.

### III.   CONCLUSION & PRAYER

Accordingly, the motion to dismiss should be granted under the public disclosure bar and the Amended Complaint should be dismissed with prejudice.

Respectfully submitted,

/s/ Justin R. Opitz
Justin R. Opitz
State Bar No. 24051140
McGuireWoods LLP
2000 McKinney Avenue, Suite 1400
Dallas, Texas 75201
(214) 932-6400
Fax: (214) 932-6499
jopitz@mcguirewoods.com

Jeremy S. Byrum
McGuire Woods, LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219-3916
(804) 775-4305
Fax: (804) 698-2080
jbyrum@mcguirewoods.com

ATTORNEYS FOR WELLS FARGO
BANK, N.A., WELLS FARGO BANK, N.A.;
as successor in interest to WACHOVIA
BANK, N.A.

/s/ Thomas V. Panoff
Lucia Nale
(Bar No. 6201684IL)
Thomas V. Panoff
(Bar No. 6283695IL)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600 (Telephone)
(312) 706-8297 (Facsimile)

Keith M. Aurzada
(Bar No. 24009880)
Bradley J. Purcell
(Bar No. 24063965)
BRYAN CAVE LLP
2200 Ross Avenue, STE 3300
Dallas, Texas 75201
Telephone 214-721-8000
Facsimile 214-721-8100

ATTORNEYS FOR DEFENDANT
CITIBANK N.A.

/s/ Jason M. Hopkins
David W Klaudt
State Bar No. 00796073
Jason M. Hopkins
State Bar No. 24059969
Greenberg Traurig LLP
2200 Ross Avenue, Suite 5200
Dallas, TX 75201
(214) 665-3616
Fax: (214) 665-3601
klaudtd@gtlaw.com
hopkinsjm@gtlaw.com

Matthew J Cannon
Greenberg Traurig, LLP
77 West Wacker Drive, Suite 3100
Chicago, IL 60601
312-456-8400
cannonm@gtlaw.com

ATTORNEYS FOR JPMORGAN CHASE
BANK

/s/ Gregory C. Cook
Gregory C. Cook
State Bar No. 24084974
Steve Corhern
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, AL 35201-0306
(205) 251-8100
Fax: (205) 226-8799
gcook@balch.com

Michael A. Logan
State Bar No. 12497500
C. Jeffrey Novel
State Bar No. 24037198
Kane Russell Coleman Logan, PC
3700 Thanksgiving Tower
1601 Elm Street
Dallas, Texas 75201
(214) 777-4200
Fax: (214) 777-4299
mlogan@krcl.com
jnovel@krcl.com

ATTORNEYS FOR COMPASS BANK

/s/ William P. Huttenbach
William P Huttenbach
State Bar No. 24002330
Hirsch & Westheimer PC
1415 Louisiana, 36th Floor
Houston, TX 77002
(713) 220-9184
Fax: 713-223-9319
phuttenbach@hirschwest.com

ATTORNEYS FOR THE AMERICAN
NATIONAL BANK OF TEXAS

/s/ Michael J. Bronson
Michael J. Bronson
Laurie A. Witek
Dinsmore & Shohl LLP
255 E. Fifth St., Suite 1900
Cincinnati, OH 45202
(513) 977-8200
Fax: (513) 977-8141
michael.bronson@dinsmore.com
laurie.witek@dinsmore.com

Anthony J. Campiti
State Bar No. 00798092
Thompson & Knight LLP
1722 Routh St., Suite 1500
Dallas, TX 75201-2533
(214) 969-1700
Fax: (214) 969-1751
tony.campiti@tklaw.com

ATTORNEYS FOR FIFTH THIRD
BANK

/s/ M. Chad Berry
Stacy B. Loftin
State Bar No. 12489500
M. Chad Berry
State Bar No. 24001730
Adams, Lynch & Loftin, P.C.
3950 Highway 360
Grapevine, Texas  76051-6741
(817) 552-7742
Fax: (817) 328-2942
sbl@all-lawfirm.com
cberry@all-lawfirm.com

ATTORNEYS FOR FROST BANK

/s/ Kenneth E. Broughton, Jr.
Kenneth E Broughton , Jr
State Bar No. 03087250
Michael H. Bernick
State Bar No. 24078227
Reed Smith LLP
811 Main Street , Suite 1700
Houston, TX 77002
(713) 469-3819
Fax: (713) 469-3899
kbroughton@reedsmith.com
mbernick@reedsmith.com

Roy W. Arnold
Reed Smith LLP
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
(412) 288-3916
rarnold@reedsmith.com

ATTORNEYS FOR MANUFACTURERS
AND TRADERS TRUST COMPANY

/s/ Thomas B. Walsh, IV
Thomas B. Walsh, IV
State Bar No. 00785173
Winston & Strawn LLP
2501 N. Harwood St., 17th Floor
Dallas, TX  75201
(214) 453-6460
Fax: (214) 453-6400
twalsh@winston.com

ATTORNEYS FOR BANK OF AMERICA,
N.A., COMERICA BANK, PNC BANK N.A.

/s/ Joseph B. VanFleet
Joseph B. VanFleet
Timothy D Gronewold
Howard & Howard Attorneys PLLC
211 Fulton Street, Suite 600
Peoria, IL 61602
(309) 672-1483
Fax: 309-672-1568
jvanfleet@howardandhoward.com
tgronewold@howardandhoward.com

Brian J Hurst
State Bar No. 10313300
Nicholas O Kennedy
Baker & McKenzie, LLP
2300 Trammell Crow Center
2001 Ross Ave
Dallas, TX 75201
(214) 978-3075
Fax: 214/978-3099
brian.hurst@bakermckenzie.com

ATTORNEYS FOR CENTRUE BANK

/s/ Michael S. Smiley
Michael S Smiley
State Bar No. 18526550
Christopher Jason Fenton
State Bar No. 24087505
Underwood Law Firm, P.C.
PO Box 9158
Amarillo, TX 79105-9158
(806) 376-5613
Fax: (806) 349-9470
mike.smiley@uwlaw.com
jason.fenton@uwlaw.com

Cara Doak Kennemer
State Bar No. 24036489
Underwood Law Firm, P.C.
1008 Macon Street, Suite 101
Fort Worth, TX 76102
(817) 885-7529
Fax: (817) 977-0880
cara.kennemer@uwlaw.com

ATTORNEYS FOR AMARILLO NATIONAL
BANK

/s/ Craig C. Martin
Craig C. Martin
Illinois Bar No. 6201581
Michele L. Slachetka
Illinois Bar No. 6297640
Jenner & Block LLP
353 N. Clark Street
Chicago, IL  60654-3456
(312) 222-9350
Fax:  (312) 527-0484
cmartin@jenner.com
mslachetka@jenner.com

/s/ Ronald W. Breaux
Ronald W Breaux
State Bar No. 02937200
Haynes and Boone, LLP
2323 Victory Ave., Suite 700
Dallas, TX 75219-7673
(214) 651-5688
Fax: (214) 651-5940
ron.breaux@haynesboone.com

ATTORNEYS FOR THE NORTHERN
TRUST COMPANY

/s/ Daniel P. Callahan
Daniel P Callahan
State Bar No. 03648700
Kessler Collins
2100 Ross Ave, Suite 750
Dallas, TX 75201
(214) 379-0722
Fax: (214) 373-4714 FAX
dpc@kesslercollins.com

William Scott Turnbull
Crary Buchanan PA
759 SW Federal Highway, Suite 106
Stuart, FL 34994
(772) 287-2600
Fax: 772-223-4360
Turnbull@crarybuchanan.com

ATTORNEYS FOR SEACOAST
NATIONAL BANK

## CERTIFICATE OF SERVICE

I certify that I served a copy of the foregoing on all counsel of record via the Court's

CM/ECF system on December 20, 2017.

/s/ M. Chad Berry
M. Chad Berry

21